IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| COURTNEY L. MERRIWEATHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:13-cv-456-MEF-CSC |
| | ) |
| CHARTER COMMUNICATIONS, LLC; | ) JURY DEMAND |
| CHARTER COMMUNICATIONS | ) |
| HOLDING COMPANY, LLC; | ) |
| CHARTER COMMUNICATIONS, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. §§ 2000(e) et seq. as amended by "The Civil Rights Act of 1991," 42 U.S.C. § 1981a (hereinafter "Title VII") and 42 U.S.C. § 1981, which provide for relief against discrimination in employment on the basis of race. Specifically, Plaintiff alleges that the Defendant discriminated against him based on his race, African-American, in the terms and conditions of his employment in violation of Title VII and 42 U.S.C. §1981. The Plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

2. Plaintiff alleges Charter Communications unlawfully subjected him and other African-American employees to a discriminatory work environment based on his race, African-American; discriminated against him and other African-American employees based on his race, in the terms and conditions of his employment including pay, promotion and discipline, and denied him specific promotions based upon his race.

## JURISDICTION AND VENUE

3. The unlawful employment practices alleged herein below were committed by the Defendant within Montgomery County, Alabama. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5.

4. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), and 42 U.S.C. § 2000e-5; and 42 U.S.C. §§ 12112, 12117(a) and 12203, which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by § 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981.

5. The Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C. § 1981a.

## PARTIES

6. Plaintiff Courtney Merriweather (hereinafter sometimes referred to as "Merriweather") is an African-American male citizen of the United States, and a resident of the State of Alabama. Merriweather was formerly employed by the Defendant.

7. Defendant, Charter Communications, LLC, Charter Communications Holding Company, LLC, and Charter Communications, Inc., doing business as Charter Communications, (hereinafter sometimes referred to as "Charter") is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b). At all times relevant to this action, Charter has employed at least fifteen (15) or more employees.

8. At all relevant times, Plaintiff was an employee of Defendant within the meaning of Title VII.

2

## ADMINISTRATIVE PREREQUISITES

9. Plaintiff has met all administrative conditions precedent for the filing of this case under Title VII. Plaintiff timely filed a charge of discrimination and has received his Right-to-Sue Notice. Plaintiff has timely brought this action following the issuance of his Right-To-Sue Notice.

10. Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") setting forth claims of race discrimination against the Defendant within 180 days of the occurrence of the last discriminatory act. (See EEOC Charge attached hereto as Exhibit "A").

11. The EEOC issued a finding in favor of Plaintiff holding that he had established that Charter had discriminated against him based on his race. (See EEOC Letter of Determination attached hereto as Exhibit "B").

12. The EEOC issued Plaintiff a Right-to-Sue Notice dated March 29, 2013. (See Notice of Right-to-Sue attached hereto as Exhibit "C").

## FACTS

13. Merriweather is a former employee of Charter Communications.

14. Charter Communications provides cable, telephone and other similar services.

15. Merriweather is an African-American who was hired by Charter on or about August 13, 2001 as a disconnect technician. In 2011, Merriweather was a service technician.

16. During Merriweather's employment with Charter, he witnessed and suffered discrimination based on his race, African-American. He and other African-Americans were not treated in the same manner as Caucasians. Caucasians received preferential treatment. Merriweather and other African-Americans were denied opportunities for advancement to more favorable positions

and promotions in pay or prestige. Merriweather and other African-American were treated less favorably than Caucasians in the terms and conditions of their employment and the application of employment rules and policies were applied differently to Merriweather and other African-Americans.

17. During his employment with Charter, Merriweather applied for many advancement opportunities for which he was qualified and he was denied all of these promotions. During his employment, Merriweather observed that he and other African-Americans were not hired or advanced by Charter. Charter hired Caucasians with less qualifications than the African-American applicants. Charter hired Caucasians that were not qualified and did not meet the job requirements.

18. Merriweather complained to his supervisor and personnel in Human Resources that he was not being promoted and also complained that he believed he was being denied promotions due to his race.

19. On or around February 2011, Merriweather applied for the position of CLI technician. In fact, Human Resources Director, Sue Johnston, called Merriweather and told him to apply for the position. One of the requirements for the job was experience as a Broad Band Technician II. Plaintiff had served as a Broad Band Technician II for several years. Merriweather applied for the position because it was a promotion and a more favorable position, he had the requisite qualifications, including the experience, it was a more favorable working environment, and the salary scale would allow him to make more in pay than he was earning in his current position.

20. Charter did not hire Merriweather for the position of CLI technician. Instead, Charter hired a Caucasian applicant that was not qualified. The Caucasian applicant did not have the requisite experience as a Broad Band Technician II. The Caucasian employee was an outside

applicant that had worked for Charter in the past, left Charter, and then applied for CLI Technician.

21.     Before applying for CLI Technician, Merriweather had applied for other positions for which he was qualified, but he did not receive the positions.

22.     Merriweather was also prevented from interviewing for another position because his supervisor loaded him up with work for the day so that he could not attend the interview and also complete his work.

23.     Merriweather inquired and complained to Human Resources Director, Sue Johnston, and others about what he must do to advance and receive the positions for which he was applying. Merriweather never received an answer. Merriweather complained that he believed that his race was the reason he was being denied the promotions since less qualified Caucasians were being hired over him.

24.     Additionally, while Merriweather was employed with Charter, Merriweather and other African-Americans suffered disparate treatment based on their race.

25.     Merriweather and other African-Americans were made to make jumper cables or ties when they were on break or injured and their Caucasian counterparts were not.

26.     Merriweather and other African-Americans were segregated into crews. The African-American supervisor supervised mainly African-Americans and the Caucasian supervisor supervised mainly Caucasians.

27.     Caucasians and African-Americans were segregated into different areas of Montgomery, Alabama to work. Merriweather and other African-Americans were given areas that were primarily African-American areas in the west and south sections of Montgomery. Caucasians were given areas that were primarily Caucasian areas, such as east Montgomery. The areas of west Montgomery and south Montgomery require more work because the homes are older and it takes

5

more time to install the cable. At times, the homes have to be rewired. The areas around east Montgomery have newer homes that do not require as much work. As a result, African-Americans were given more work and more demanding work schedules than Caucasians. Merriweather and other African-Americans were held to higher standards of employment than similarly situated Caucasian employees.

28. Merriweather and other African-Americans were discriminated against in disciplinary actions and subjected to stricter scrutiny in the terms and conditions of their employment than Caucasians. African-Americans were unfairly disciplined. This was part of the pattern and practice of Charter to prohibit advancement by African-Americans. If African-Americans were disciplined, then they could not test to receive advancement opportunities. Charter disciplined African-Americans to keep them from testing for advancement opportunities, but it did not discipline Caucasian employees for the same conduct. Charter also applied its disciplinary policies and actions differently to African-Americans than Caucasians. Caucasians would not be disciplined and/or disciplined as severely as African-Americans.

29. Charter preferred to hire Caucasians and, once hired, Caucasians received better treatment and were promoted faster than African-Americans. Failure to promote African-Americans or allow them opportunities to advance, and treating them differently than their Caucasian counterparts was a pattern and practice at Charter.

30. Merriweather and other African-Americans were subjected to stricter scrutiny during evaluations and observations. To receive advancement opportunities, employees had to be critiqued and/or observed at times. African-Americans received stricter scrutiny during the evaluation and observation process so that they would not qualify for advancement opportunities. Caucasians were

not evaluated as harshly as African-Americans.

31.   Charter created a racially hostile work environment based on the apparent disparate treatment of Caucasians.

32.   Merriweather and other African-Americans were subjected to comments about the disparate treatment and racially hostile work environment at Charter. For instance, the Caucasian that received the job of CLI Technician over Merriweather stated that "if you were white, it would be alright." Comments such as these were made at Charter based on the difference in treatment that was obvious to those people working there.

33.   Merriweather and other African-Americans complained about the racially discriminatory and hostile conduct, but no remedial actions were taken by Charter. Merriweather and other African-Americans complained about the discrimination and racially hostile conduct to human resource personnel, supervisors, and/or management, but no action was taken by Charter to stop and/or prevent the improper conduct from recurring and it continued.

34.   The racially discriminatory and hostile conduct was ongoing and of a continuing nature, and it created a racially hostile environment in which Merriweather and other African-Americans were forced to work. To work in such an environment, caused Merriweather and other African-Americans embarrassment, suffering, and mental anguish.

35.   On June 1, 2011, Merriweather filed a charge of discrimination with the EEOC. The EEOC found that Merriweather had been discriminated against during his employment with Charter due to his race. Specifically, Merriweather applied for the CLI Technician and he was qualified for the position. The EEOC found that Charter hired a Caucasian that did not meet the minimum qualifications for the CLI Technician position. The EEOC further found that Merriweather was a

satisfactory employee, that was more than qualified for the position of CLI Technician, than the unqualified Caucasian. (See EEOC Letter of Determination attached hereto as Exhibit "B").

36. As a result of the discrimination and hostile working environment and the failure of Charter to respond to his complaints about discrimination, Merriweather was forced to resign from Charter. Merriweather resigned from Charter after receiving notice that he did not receive the CLI technician position that he knew he was qualified for and a Caucasian that was unqualified had been hired for the position over him. Merriweather complained of the disparate treatment to human resources personnel, supervisors, and management and no one responded. Merriweather knew that he would never be allowed the same advancement opportunities as Caucasians at Charter and he was tired and humiliated by the disparate treatment of himself and other African-Americans. Merriweather resigned in August 2011 shortly after filing a charge with the EEOC. Merriweather was forced to seek employment with another company where his pay was lower and he lost substantial employment benefits.

37. Upon information and belief, Charter has a history of discrimination against African-American employees in violation of Title VII.

## COUNT I- RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. §1981

38. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 37 above with the same force and effects as if fully set out in specific detail herein below.

39. Plaintiff was discriminated against by Defendant in the terms, conditions, and privileges of his employment through the creation and toleration of a racially discriminatory and hostile work environment.

40. Charter, through its agents and employees, has a racial animus against African-Americans, including the Plaintiff.

41. Plaintiff was directly affected by the discriminatory practices described in this Complaint.

42. The systemic discrimination, as previously set forth, further adversely affected Plaintiff and other African-Americans by promoting and reinforcing racial stereotypes and racial bias in the workplace.

43. The Plaintiff made good faith complaints in opposition to the racial discrimination and racial harassment to which Plaintiff, and other African-American employees, were subjected.

44. The Defendant intentionally and maliciously discriminated against the Plaintiff by subjecting him to a racially hostile work environment, discriminatorily assigning him job duties, discriminatorily denying him pay increases and promotions, discriminatorily applying job requirements, and by subjecting the Plaintiff to stricter scrutiny than his Caucasian co-workers. As set out above, Defendant discriminatorily denied Plaintiff several promotions due to his race, including the denial of the promotion to the CLI Technician position.

45. As the result of the Defendant's conduct, the Plaintiff was deprived of income and other benefits due to him. Plaintiff also suffered embarrassment, humiliation, inconvenience, and mental distress.

46. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

47. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II - CONSTRUCTIVE DISCHARGE

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 47 above with the same force and effects as if fully set out in specific detail herein below.

49. As a result of the ongoing discrimination by Defendant, in August 2011 Plaintiff was constructively discharged by Defendant due to Defendant's failure to take steps to correct, or even address, the discrimination against the Plaintiff and other African Americans. All of these acts by Defendant were in violation of Title VII of the 1964 Civil Rights Act, as amended.

50. The discrimination against the Plaintiff was ongoing and continuous in nature, thereby making the filing of additional charge of discrimination unnecessary.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests the following relief:

48. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by Title VII and 42 U.S.C. § 1981.

49. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at the Defendant's request from continuing to violate Title VII of the Act of Congress known as "The Civil Rights Act of 1964," as amended by "The Civil Rights Act of 1991," and 42 U.S.C. § 1981.

50. Grant the Plaintiff an order requiring the Defendant to make him whole by awarding Plaintiff reinstatement and promotion into the position he would have occupied in the absence of

race discrimination by the Defendant with the same seniority, leave and other benefits of the position (or front pay), backpay (with interest), and by awarding compensatory, punitive, and/or nominal damages, attorney's fees, costs, and expenses.

51. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**RESPECTFULLY SUBMITTED** this 27th day of June, 2013.

*/s/ Hilary Y. Parks*
HILARY Y. PARKS [YOTHH9022]
JACKSON, ANDERSON & PATTY, P.C.
P.O. Box 1988
Montgomery, AL 36102
(334) 834-5311/ (334) 834-5362 (fax)
Hparks@JAandP.com

**CANDIS A. McGOWAN [ASB 9358-o36c]**
Wiggins, Childs, Quinn, & Pantazis
The Kress Building 301-19th Street, North
Birmingham, Al 35203
205-314-0500/ (205) 254-1500 (fax)
CmcGowan@wcqp.com

PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE TO A JURY

*/s/ Hilary Y. Parks*
HILARY Y. PARKS [YOTHH9022]

**DEFENDANTS MAY BE SERVED VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AS FOLLOWS:**

Charter Communications, LLC
C/o CSC-LAWYERS INCORPORATING SERVICE
Registered Agent for Charter Communications, LLC
150 S PERRY ST
MONTGOMERY, AL 36104


Charter Communications Holding Company, LLC
C/o CSC-LAWYERS INCORPORATING SERVICE
Registered Agent for Charter Communications Holding Company, LLC
150 S PERRY ST
MONTGOMERY, AL 36104


Charter Communications, Inc.
C/o CSC-LAWYERS INCORPORATING SERVICE
Registered Agent for Charter Communications, Inc.
150 S PERRY ST
MONTGOMERY, AL 36104